IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RHONDA LOVATO,

        Plaintiff,

                              No. CIV-06-0001 JC/RHS

vs.

PRESBYTERIAN HEALTHCARE
SERVICES, and JASON FAHRLANDER,
Individually, and in his official capacity,

        Defendants.

## MEMORANDUM OPINION & ORDER

THIS MATTER comes before the Court on *Defendants' Motion and Memorandum in Support of Summary Judgment on Plaintiff's Statutory Claims (Age Discrimination, Sex Discrimination and Retaliation)*, filed on December 27, 2006 (*Doc.* 107)("Motion"). The Court, having considered the Motion, the parties' briefs, the relevant authority, and being otherwise fully advised, grants the Motion.

**I.**     **Background**

The facts below are either undisputed, deemed admitted, or viewed in the light most favorable to Plaintiff as non-moving party. On September 8, 2003, Presbyterian Healthcare Services ("PHS") hired Rhonda Lovato ("Plaintiff") as nursing director for the Day Surgery Unit at Presbyterian Hospital and Perioperative Services at Kaseman Hospital. She was 43 years old at the time she was hired. Three months into her employment, Plaintiff received a favorable performance evaluation and after six months, Plaintiff agreed to take on additional responsibilities as director of the Gastrointestinal Laboratory. Jason Fahrlander, her immediate

1

supervisor, was generally pleased with her job performance during the first six months of her employment. Plaintiff and Mr. Fahrlander got along well and would socialize on occasion. Nonetheless, Mr. Fahrlander began to receive complaints about Plaintiff from a number of her coworkers a few months after Plaintiff started.[1]

In May 2004, Plaintiff learned about a memorandum addressed to all PMG providers ("Anderson Memorandum") regarding surgical referrals. She approached Mr. Fahrlander to discuss her belief that the directives advanced in the Anderson Memorandum violated federal law. Sometime in the early summer of 2004, Mr. Fahrlander became outwardly critical of Plaintiff's job performance. At the request of Mr. Fahrlander, Plaintiff met with him and Mr. Stephen Snider, the human resources representative for surgical services, on July 19, 2004 to discuss Plaintiff's job performance and job requirements. After this meeting, Plaintiff requested that Mr. Fahrlander provide in writing the areas of Plaintiff's performance that concerned him.

Within three weeks, PHS received a letter dated August 6, 2003 from Marcia E. Lubar, counsel retained by Plaintiff, which expressed Plaintiff's concerns over gender and age discrimination and retaliation. In response to the letter, PHS conducted an internal investigation and concluded that Plaintiff's concerns were unsubstantiated. On September 22, 2004, PHS drafted a letter to Plaintiff stating its findings. Defendant Fahrlander, Plaintiff and Mr. Snider met again on August 25, 2004, at which time Defendant Fahrlander provided Plaintiff with a

---

[1]In *Plaintiff's Response*, pp. 3-4, ¶¶ 5-7, Plaintiff does not specifically address the complaints raised against her by Beatrice Vallejos and Tammy C'de Baca a few months after she started as set forth in *Defendants' Motion*, pp. 4-5, ¶¶ 6-7. Therefore, these facts are admitted by the Court. The Court notes that Ms. Vallejos was 49 years of age at the time she first complained about Plaintiff, and Ms. C'de Baca was 34 years of age. April Verhoog, also at that time a nursing director, first complained about Plaintiff's job performance in February or March of 2004. *Defendants' Motion*, Ex. D, p. 44. Ms. Verhoog was 34 years old at the time she first raised complaints about Plaintiff.

written summary of his overall performance concerns.  The three also met on September 2, 2004 to further discuss concerns over Plaintiff's job performance.  On November 2, 2004, pursuant to the specific requests of two of Plaintiff's direct reports, Mr. Fahrlander met with a number of Plaintiff's coworkers and subordinates to discuss work-related complaints and concerns about Plaintiff's ability to work well with others.

After this meeting,  Mr. Fahrlander decided to approach Plaintiff to discuss her future at PHS.  He met with Plaintiff on November 4, 2004 and presented her with three options related to her employment: 1) transfer within PHS to a non-supervisory position while keeping her same salary for a reasonable period of time as she searched for a new position; 2) voluntarily resign and sign a release in exchange for a severance package; or 3) refuse either option and face termination.  Although given the weekend to consider these options, Plaintiff refused options one and two on the spot and was terminated that same day.  Plaintiff was 44 years old at the time of her termination.  After Plaintiff's termination, Ms. April Verhoog assumed much of Plaintiff's responsibilities and eventually replaced Plaintiff.

Plaintiff  filed a complaint with the New Mexico Department of Labor, Human Rights Division and the Equal Employment Opportunity Commission on November 8, 2004.  On January 3, 2006, Plaintiff filed a multiple count complaint against Mr. Fahrlander and PHS (collectively "Defendants"), alleging age discrimination and retaliation under the ADEA (Count I), sex discrimination and retaliation under Title VII (Count II), sex and age discrimination and retaliation under NMHRA (Count III), retaliatory discharge (Count IV), breach of an implied contract of employment (Count V), breach of the covenant of good faith and fair dealing (Count VI), intentional infliction of emotional distress (Count VII) and prima facie tort (Count VIII).  Defendants presently move for summary judgment on Counts I, II and III.

## II.     Legal Standard

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P 56(c).  To overcome summary judgment, "the movant need only to point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002).  The Court will grant summary judgment "if the movant establishes entitlement to judgment as a matter of law given [the] uncontroverted, operative facts. . . .  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  The party opposing the motion may not rest on mere allegations or denials of pleadings, but must set forth specific facts showing a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The court may grant summary judgment "if the non-moving party's evidence is merely colorable[] or is not significantly probative." Id. at 250-51 (citations omitted).  "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III.    Analysis

As a preliminary matter**,** based on Plaintiff's voluntary request, the Court will dismiss the NMHRA and Title VII claims of sex discrimination.  Therefore, Count II of the Complaint must be amended to read retaliation under Title VII against Defendant PHS, and Count III of the

4

Complaint must be amended to read age discrimination and retaliation under NMHRA against Defendants PHS and Fahrlander. The revised counts are considered below.

### A.     ADEA and NMHRA Claims

In Count I of the Complaint, Plaintiff alleges she was discriminated against in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). The ADEA makes it "unlawful for an employer. . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. 623(a)(1). In addition, Plaintiff alleges age-based discrimination under the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-7(A) ("NMHRA") in Count III.[2] In evaluating an ADEA claim based on indirect evidence of discrimination, the Tenth Circuit has adopted the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and its successors. *See, e.g., McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (applying

---

[2]The NMHRA forbids:

> an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition. . . .

N.M. Stat. Ann. § 28-1-7(A). The New Mexico state courts have indicated a willingness to embrace tests developed in light of *McDonnell Douglas* and have repeatedly applied the *McDonnell Douglas* burden-shifting analysis in wrongful termination cases when there is an absence of direct evidence of discrimination. *See Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 954 P.2d 65, 70 (N.M. 1998); s*ee also Smith v. FDC Corp.*, 109 N.M. 514, 517 (N.M. 1990)(applying *McDonnel Douglas* burden shifting framework). Hence, this Court notes, and the parties agree, that the *McDonnell Douglas* burden shifting analysis applies to claims of discrimination under the NMHRA and the ADEA. Thus, the Court will consider both discrimination claims using this standard.

*McDonnell Douglas* to ADEA claim). To bring a successful ADEA claim under this framework, a plaintiff must initially establish a prima facie case of age discrimination. *See McDonnell Douglas*, 411 U.S. at 802. This burden is "not onerous." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). If the plaintiff can establish a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant can meet this burden, "summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Plotke*, 405 F.3d at 1099.

        **1.**        **Prima Facie Case of Discrimination under the ADEA and NMHRA**

As set forth by the Tenth Circuit in *Bolton v. Sprint/United Mgmt. Co.*, No. 06-3042, 2007 U.S. App. LEXIS 5468, at *11 (10th Cir. Mar. 16, 2007), in a typical ADEA case based on discharge, a plaintiff can establish a prima facie case by showing that she (1) is within the protected age group; (2) was doing satisfactory work; (3) was discharged; and (4) was replaced by a younger person. *See also, Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). There is no question that Plaintiff has satisfied the first and third prongs of the test - Plaintiff was 44 years old when she was terminated. With respect to the second prong, the Court must determine whether the Plaintiff "continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time." *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1121 (10th Cir. 1991). Here, Plaintiff's own testimony supports her belief that her work was satisfactory:

    Q: And at that time, Mr. Fahrlander told you that you were doing a very good job?

    A: That is correct.

>Q: Are those his exact words?
>
>A: Yes, they were.
>
>Q: And was there anything else discussed at that time regarding your performance?
>
>A: There was never anything discussed about my performance.
>
>Q: So the only thing he told you was that you were doing a very good job?
>
>A: Yes, and to hang in there. I was doing a very good job and hang in there.

*Plaintiff's Response,* Ex. 7, p. 115, ln. 20-25, p. 116, ln. 1-7.  In addition, Plaintiff has provided evidence that her team and its individual members met its Service Excellence Rewards Program target.  *Plaintiff's Response*, Ex. 18.  These facts are sufficient to meet the requirements of the second prong of the *McDonnell Douglas* test.  Finally, in addressing prong four of the test, Plaintiff has claimed, and Defendants do not contest, that Ms. Verhoog, who was 35 years of age at the time of Plaintiff's termination, assumed much of Plaintiff's responsibilities and was eventually promoted as Plaintiff's full-time replacement.  Accordingly, Plaintiff has made a prima facie showing.

### 2. Non-Discriminatory Reason for Defendants' Actions

The Court must next consider whether the Defendants offered a facially non-discriminatory reason for Plaintiff's termination.  Defendants proffered reason for firing Plaintiff was due to her inability to perform her work and multiple complaints from employees.  In support of these reasons, Defendants offer extensive evidence and deposition testimony regarding Plaintiff's job-related performance.  For instance, Defendant Fahrlander reiterated management concerns about her performance in the follow-up memorandum to the July 19, 2004 job performance meeting, which memorandum was requested by Plaintiff.  *Defendants' Motion*,

Ex. A-2.  Further, Ms. Verhoog testified that "[Plaintiff] is difficult to get ahold of" and "difficult to work with, and she'd become very aloof." *Defendants' Motion*, Ex. D, p. 55.  In addition, Ms. Beatrice Sceery testified that she "called [Ms. Verhoog] when [she] had gotten fed up with what was going on, and asked her to set up a meeting between me and her and Jason, because I had had it working and dealing with [Plaintiff]." *Defendants' Motion*, Ex. I, p. 6.  She further testified that "something would have to be done or [she] had to get out of there.  [She] could not work under a hostile environment like that." *Id.* at 79.

As further support for Plaintiff's termination, Defendants offer the letter from Stephen L. Snider, Human Resources Director, dated September 22, 2004, which was drafted in response to the letter from plaintiff's counsel, dated August 6, 2004.  In this letter, Mr. Snider concludes that "[Plaintiff] has not been discriminated against on the basis of age, sex or any other protected characteristic.  She has not met the requirements of her position and is undergoing the process of performance management." *Defendants' Reply*, Ex. O, p. 4.  The Court is satisfied that Defendant has provided a legitimate, non-discriminatory reason for its decision to terminate Plaintiff.

      **3.**    **Pretext**

Since Defendants have met this burden, to avoid summary judgment Plaintiff must show that a reasonable trier of fact might find age to have been a determining factor in the employment decision, thus demonstrating that Defendants reasons are pretextual in nature. *Plotke*, 405 F.3d at 1099.  The relevant inquiry is not whether Defendants' actions were wise, fair or correct, but whether Defendants honestly believed those reasons and acted in good faith on those beliefs. *Bullington v. United Airlines, Inc.*, 186 F.3d 1303, 1318 (10th Cir. 1999).  Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision. *EEOC*

*v. Flasher Co.*, 986 F.2d 1312, 1322 n.12 (10th Cir. 1992).

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). The Court will not, however, "act as a super personnel department that second guesses employers' business judgments." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999) (quotation omitted); *see also Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000) (relevant pretext inquiry is how facts appeared to the decision maker). Likewise, in the pretext analysis, an employee's own opinion of her performance is irrelevant. *See Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1177-78 (10th Cir. 2000).

Defendants vehemently deny their proffered reasons for terminating Plaintiff amount to pretext. They argue that the decision to approach Plaintiff on November 4, 2003 with three choices came only after a very serious staff meeting on November 2, 2003, which was requested by two subordinates of Plaintiff, and note the close proximity between the staff meeting date and the termination date. The Court agrees and is in no position to question Defendants' business decision.

In addition, it undisputed that Defendant Fahrlander hired Plaintiff and ultimately terminated her some fourteen months later. Defendants argue that this fact tends to support the "same actor doctrine," and the Court agrees. This "same actor inference" has been recognized in varying degrees by nearly every circuit. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2005). The Tenth Circuit is no exception and has decided that in cases where "the

9

employee was hired and fired by the same person within a relatively short time span," there is "a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Id.* (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991). The Court is mindful, however, that the Plaintiff still has the opportunity to present countervailing evidence of pretext and that "same actor" evidence gives rise to an inference, rather than a presumption, that no discriminatory animus motivated the employer's actions. *Id.* at 1183 (internal citations and quotations omitted). Nonetheless, Plaintiff has failed to present such evidence.

Plaintiff contends that Ms. Verhoog, who was also directly under the supervision of Defendant Fahrlander and who held a similar position within PHS, was treated differently than Plaintiff. In support of this claim, Plaintiff asserts the following : 1) she was required to attend section meetings and was treated in a condescending manner while in attendance, while Ms. Verhoog did not have to attend; 2) she and Ms. Verhoog were required to prepare proposals to improve the results of the previous employees' satisfaction survey, and to make a presentation addressing these proposals at a staff meeting, but that Ms. Verhoog did not make the presentation; 3) she was required to prepare her expense reports for her units while Ms. Verhoog was not; 4) she had to use paid time off while Ms. Verhoog was permitted to take time off with pay without the time being deducted against accrued paid time off; and 5) Ms. Verhoog was allowed to work from home and Plaintiff was not. The Court considers each of these points in turn below.

Plaintiff has not directed the Court's attention to any evidence in the record other than her own affidavit, nor can the Court find any, to support her claims that Defendant Fahrlander addressed her in a condescending manner. She has also failed to produce any evidence to support allegations concerning Ms. Verhoog's ability to forgo scheduled meetings. Plaintiff's

claim that she had to prepare a proposal while Ms. Verhoog did not is easily countered by her own admissions at her deposition, where she stated that she did not know if Ms. Verhoog did the presentation. *Defendants' Motion*, Ex. L, p. 136. In addition, Plaintiff's claim that she received no assistance from Ms. Vallejos or her staff is directly contradicted by an email in which Plaintiff actively sought information that she needed in order to complete her tasks prior to her complaint in August. Further, this allegation does nothing to support Plaintiff's claim that Ms. Verhoog was not required to prepare similar reports, with or without assistance. Plaintiff's argument that Ms. Verhoog was permitted to take time off without the time being deducted against accrued paid time off is equally unconvincing. The Court has reviewed the time cards and finds that the sixteen hours time off was accurately reflected in PHS's records. Finally, Plaintiff's claim that Ms. Verhoog was allowed to work from home while Plaintiff was not is completely unsupported by any facts in the record. Once again, Plaintiff solely relies on her affidavit as support for these allegations. Evidence presented by Plaintiff concerning pretext must be more than plaintiff's subjective beliefs, conjecture or generic and conclusory testimony. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988). In summary, each of these claims amounts to mere conjecture and remain unsupported by the record.

Further, Plaintiff's argument that Ms. Karen Yost, age sixty-three at the time in question, was treated poorly by Defendant Fahrlander is not what is reflected by her own testimony. When asked what her relationship with Defendant Fahrlander was like, Ms. Yost stated that it was "difficult." She further stated that she had "a different view of things than he might as a newcomer," and that this made things "a little uncomfortable." When asked what kind of complaints Defendant Fahrlander made about her, Ms. Yost responded that "[they] had a different idea of what management -- good management meant. His feeling was that you

couldn't manage or be a good manager unless you were on-site, right there." *Defendants' Reply*, Ex. R, pp. 10-13.  In light of this testimony, the Court strains to find any indication that Ms. Yost was treated poorly, or more specifically, how Ms. Yost's age played a role in her departure.  The only question in the record addressing Ms. Yost's age was whether or not she felt that Defendant Fahrlander was threatened by her because of her years of experience, to which Ms. Yost responded that she thought "the knowledge sometimes made him uncomfortable.  Whether it was threatened or not, I don't know." *Id.* at p. 13.  With respect to Ms. Evelyn Higgins, Defendants observe, and the Court agrees, that the mere fact that an employee over the age of forty is terminated is not tantamount to evidence that Plaintiff was also terminated because of her age.  *See e.g., Norten's v. Sam's Club*, 145 F.3d 114, 119 (2nd Cir. 1998).  Since Plaintiff has not identified a triable issue of fact as to whether she was terminated because of her age, Plaintiff has failed to meet her burden to resist summary judgment on the ADEA and NMHRA claims raised in Counts I and III.[3]

### B.    Retaliation Claims under NMHRA, ADEA and Title VII

The Court must consider retaliation claims brought under 41 U.S.C. § 2000e *et seq.* ("Title VII"), the ADEA and the NMHRA using the *McDonnel-Douglas* burden shifting framework.[4]  *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005).

---

[3]In *Defendants' Motion*, Defendants presented alternative argument that Plaintiff could not support a claim under the ADEA and NMHRA that she was treated differently in "the terms and conditions" of her employment.  Plaintiff has not addressed this argument at all in *Plaintiff's Response* and has abandoned it.  Therefore, the Court will not consider this argument.

[4]In *Gonzales v. New Mexico Dep't of Health*, 11 P.3d. 550, 558 (N.M. 2000), the Supreme Court of New Mexico adopted the following standard in order to establish a prima facie case for retaliation: (1) the plaintiff engaged in a protected activity, (2) was subject to adverse employment action, and (3) a causal connection existed between the protected activity and the adverse employment action.  Therefore, this Court notes, and the parties agree, that the

Under this approach, a plaintiff's establishment of a prima facie case creates a presumption of retaliation. *McDonnell Douglas Corp.*, 411 U.S. at 802

### 1. Prima Facie Case for Retaliation

In order to establish a prima facie case of retaliation, Plaintiff must demonstrate that (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

Defendants have conceded the first two elements. *Defendants' Motion*, p. 23. In choosing to focus on the causation element, Defendants argue that to meet this burden, Plaintiff must show the letter of opposition dated August 6, 2004 led to her discharge. In demonstrating the Plaintiff cannot meet this burden, Defendants argue the following three points: 1) that Plaintiff's performance deficiencies were initially addressed in July, before the August 6, 2004 letter; 2) there is not a sufficiently close temporal proximity between the August 6 letter and Plaintiff's termination on November 4, 2004; and 3) with respect to causation, the November 2, 2004 meeting was an intervening cause between the two events that broke the causal chain. The Court considers each point, as well as Plaintiff's response, below.

Plaintiff cites her affidavit to support her statement that she personally complained to Steve Snider and Defendant Fahrlander before retaining legal counsel. Further, Plaintiff's counsel argues that, despite Defendants' assertions that they addressed concerns about Plaintiff's

---

McDonnell Douglas burden shifting analysis applies to claims of retaliation under the NMHRA, the ADEA, and Title VII.

job performance on July 19, "with a retaliation claim, by its very nature, there is generally some evidence of friction or dispute among the parties before retaliation occurs." *Plaintiff's Response*, p. 17. These arguments are nothing more than conjecture and gloss over the fact that specific and objective action was taken by Defendant Fahrlander by calling a meeting prior to the August 6th date. In addition, Plaintiff contends that Defendants drafted a memorandum regarding deficiencies in her performance after the August 6th letter from Plaintiff's counsel, which is directly refuted by Plaintiff's email requesting such a memorandum. Further, that Defendant Fahrlander forced Plaintiff to go out of town for a business trip on one occasion, accused her of missing certain meetings, and the fact that she may have been easily reached by some employees (but not others) does little to counter Defendants' decision to put Plaintiff on an action plan, beginning with the July 19, 2004 meeting.

Additionally, with respect to the charge that there is not a sufficiently close temporal proximity between the letter and Plaintiff's discharge, Defendants cite a number of cases in an attempt to bolster their claim that the three month time period does not support an inference of a causal connection. Plaintiff counters that the termination was "a culmination of a series of retaliatory acts following the August 6 letter and that Defendants took several months to develop a written record of alleged and perceived criticisms regarding her performance for the sole purpose of covering the true reason for the termination." *Plaintiff's Response* p. 19. Plaintiff further argues that an advertisement in the August 23, 2004 edition of *Nurse's Week* is further evidence of Defendants' preconceived plan to oust Plaintiff.

"Close temporal proximity between the employee's complaint and the adverse employment action is a factor in determining whether the employer's proffered reason is a pretext for retaliation." *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000). Mere

conjecture, however, that defendants acted with discriminatory reasons is not sufficient to establish pretext.  *Annett v. University of Kansas*, 371 F.3d 1233, 1241 (10th Cir. 2004) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).  There is no evidence that the employment meetings, which began on July 19, 2004 and can be attributed to Defendant Fahrlander's concerns and the numerous complaints raised against Plaintiff by various coworkers and subordinates, resulted from retaliation for her letter complaining of gender and sex discrimination and retaliation.

Even if the Court found that three months time was close temporal proximity between the protected activity and the retaliatory conduct, *see, e.g. Webb v. Communs.*, LLC, No. 05-1051, 2006 U.S. App. LEXIS 1993, at *26 (10th Cir. Jan. 25, 2006)(holding that temporal proximity of two months between the protected conduct and an adverse employment action may be sufficient to establish a prima facie case of retaliation),[5] the plaintiff must offer additional evidence to establish causation.  Plaintiff presents the advertisement in *Nurse's Week* to further support her claim; however, the advertisement is general in nature and seeks applicants for no less than ten different positions.  There is simply not enough evidence in the record to meet the causation element.

Moreover, with respect to Defendants third argument on the issue of causation, there being an intervening cause that breaks any causal chain between the letter and Plaintiff's termination, Defendants' urge the Court to consider the serious employee complaints that

---

[5]But see *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (holding that a minimum of two months and one week and a maximum of just under three months between the protected conduct and the adverse action is "probably too far apart . . . to establish causation by temporal proximity alone."); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (holding that a three-month period between protected activity and adverse action, standing alone, is insufficient to establish causation).

culminated with the November 2, 2004 meeting.[6]  Plaintiff minimizes the proffered intervening causes for her termination, countering with the proposition that the "motivation for the few employees who complained to Fahrlander [at the meeting] is suspect, as most of these employees were promoted immediately following [Plaintiff's] termination." *Plaintiff's Response*, p. 20. This blanket assertion, however, fails to demonstrate any weaknesses or implausibilities in Defendants legitimate reason for terminating Plaintiff's employment after learning she was the subject of numerous work related complaints.[7]  Thus, the Court finds Plaintiff is not able to establish the August 6, 2004 letter as the causal nexus for her termination and Defendants' Motion for summary judgment on the retaliation claims in Counts I, II and III is granted.

**C.     State Law Claims**

A district court is "well within its discretion in declining supplemental jurisdiction over the remainder of a case when it dismisses a plaintiff's federal claims." *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1139 (10th Cir. 2004). When a federal claim no longer supports supplemental jurisdiction, the United States Court of Appeals for the Tenth Circuit has

---

[6]*See e.g., Dibble v. Fenimore*,1:97-CV-1256 (LEK/RFT), 2006 U.S. Dist. LEXIS 33513, *22-23 (N.D.N.Y. May 15, 2006) (holding that intervening events of misconduct and insubordination could suffice on their own to provide reasons for denial of reenlistment regardless of any protected activity that may have also occurred); *see also Smith v. Am. Airlines Inc.*, No. 99 Civ. 6447, 2001 U.S. Dist. LEXIS 8443, at *14 (N.D. Ill. Jun. 22, 2001) (holding that the Court must also look to any intervening cause that breaks the causal chain).

[7]In *Defendants' Motion*, Defendants presented alternative argument that Plaintiff could not support a retaliation claim under the ADEA or Title VII.  Defendant presented argument under the heading "Plaintiff's claims that she was retaliated against when Defendant Fahrlander 'made' her attend a meeting in Florida and when Mr. Fahrlander placed her on an action plan fails as a matter of law." *Defendants' Motion*, p. 25.  Though Plaintiff, in attempting to meet the prima facie burden of her retaliation claim, stated that "Fahrlander also required [Plaintiff] to go on an out-of-town business trip to Florida with just one day's notice," *Plaintiff's Response*, p. 18, Plaintiff only briefly mentions this fact and does not address Defendants' reasoned argument to this point.  She has therefore abandoned this argument.

recognized that, consistent with 28 U.S.C. § 1367(c)(3), the ordinary response will be to dismiss the state law claims without prejudice. *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997). The remaining claims all involve the interpretation of state substantive law, and implicate conditions of state employment and questions of state employment policy. The Court believes that these questions are best answered by state courts. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and said claims will be dismissed without prejudice so that the state claims may be pursued in state court.[8]

## IV. Conclusion

Under the *McDonnell Douglas* burden shifting analysis as applied to Plaintiff's ADEA and NMHRA age discrimination claims, the Plaintiff has failed to demonstrate that the proffered reasons for her termination were pretextual in nature. With respect to Plaintiff's retaliation claims under the NMHRA, the ADEA and Title VII, Plaintiff has failed to establish a causal link between the August 6, 2004 letter drafted by her counsel and her termination on November 4, 2004. The Court declines to exercise supplemental jurisdiction over the remaining state claims of record and they will be dismissed without prejudice so that the state claims may be pursued in state court.

---

[8] By dismissing the state law claims without prejudice, Plaintiff will not be prejudiced, because under 28 U.S.C. § 1367(d), she has 30 days in which to re-file her state law claims in state court. "To prevent the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court, § 1367(d) provides a tolling rule that must be applied by state courts." *Jinks v. Richland County, South Carolina*, 538 U.S. 456, 459 (2003).

WHEREFORE,

**IT IS ORDERED**:

**I.** *Defendants' Motion and Memorandum in Support of Summary Judgment on Plaintiff's Statutory Claims (Age Discrimination, Sex Discrimination and Retaliation)*, filed on December 27, 2006 (*Doc.* 107) is GRANTED and Counts I, II and III of Plaintiff's Complaint are hereby dismissed with prejudice.

**II.** Counts IV, V, VI, VII and VIII are dismissed without prejudice.

Dated June 14, 2007.

s/John Edwards Conway

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Marcia E. Lubar, Esq.
Gregory L. Biehler, Esq.
Albuquerque, New Mexico

Counsel for Defendants:

Robert C. Conklin, Esq.
John K. Ziegler, Esq.
Conklin, Jenke & Woodcock, PC